Melissa Ho
Polsinelli PC
One East Washington, Suite 1200
Phoenix, AZ 85004
(602) 650-2000
mho@polsinelli.com

R. Ross Burris, III (pro hac vice)
Polsinelli PC
1201 W Peachtree St. NW, Suite. 1100
Atlanta, GA 30309
(404) 253-6000
rburris@polsinelli.com

Asher D. Funk (pro hac vice)
Kevin M. Coffey (pro hac vice)
Polsinelli PC
150 N Riverside Plaza, Suite. 3000
Chicago, IL 60606
(312) 819-1900
afunk@polsinelli.com
kcoffey@polsinelli.com

Attorneys for Defendant

## UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| UNITED STATES OF AMERICA *ex rel.* RALPH VASSALLO and LAURA SPAHN <br><br> Plaintiffs and Relators, <br><br> v. <br><br> RURAL/METRO CORPORATION and RURAL METRO OPERATING COMPANY, LLC <br><br> Defendants. | Case No. 2:15-cv-00119-SRB <br><br><br> **MOTION TO STRIKE** <br><br><br> **ORAL ARGUMENT REQUESTED** |

**DEFENDANT RURAL/METRO'S**
**MOTION TO STRIKE RELATORS' FIRST AMENDED COMPLAINT**

1

Defendant Rural/Metro Corporation and Rural Metro Operating Company, LLC (collectively, "Rural/Metro"), by counsel, pursuant to Fed. R. Civ. P. 12(f), submits the following Memorandum in Support of its Motion to Strike the First Amended Complaint ("FAC") filed by Ralph Vassallo and Laura Spahn (collectively, "Relators").[1]

## I.  INTRODUCTION

Relators have employed a brazen, impermissible tactic in this case in an attempt to plead a viable claim under the False Claims Act ("FCA").  Namely, they have poached information and documents that were compiled by Rural/Metro and shared with the Department of Justice ("DOJ") in the course of confidential settlement negotiations and correspondence, and used that information to supplement an insufficiently pled whistleblower lawsuit.  Relators have also usurped information from documents and records produced by Rural/Metro in response to the DOJ's Civil Investigative Demand ("CID") and regurgitated those facts into the FAC in an attempt to strengthen their allegations of fraud, despite the fact that DOJ relied on the very same information to conclude that Government intervention was *not* warranted in this case. *See* Dkt. #11, filed 9/27/16.  Courts agree that information taken from these sources (*i.e.* Rule 408 settlement conferences and discovery/investigative tools) are "immaterial" under Fed. R. Civ. Pro. 12(f) and should be stricken from a pleading.  Accordingly, Rural/Metro respectfully requests that the Court strike paragraphs from the FAC listed below in Figure 1, which are based on facts obtained

---

[1] Rural/Metro has reviewed and intends to comply with the Court's April 5, 2017 Order addressing motions pursuant to Fed. R. Civ. P. 12(b).  However, because Rural/Metro is asking the Court to strike particular allegations within the FAC which would materially influence any potential motion to dismiss under Rule 12(b) (or other of applicable Federal Rules), Rural/Metro must first understand which allegations in the FAC are properly before the Court.

from Rule 408 settlement negotiations and/or information learned through the Government's CID:

| FIGURE 1 | | | |
|---|---|---|---|
| Amended Complaint Paragraphs | Grounds to Strike | Attachments and Facts in Support of MTN to Strike | Medical Records Attached as Exhibit … |
| 178-188 "Patient 1" | Settlement materials protected by FRE 408 | Patient included as "Sample 20" (slide 25) of 7/21/16 Settlement Presentation, bates number R/M-AZ 2016 00200 through 00209 | G |
| 189-200 "Patient 2" | Settlement materials protected by FRE 408 | Patient included as "Sample 18" - bates number R/M-AZ 2016 00176 through 00188 | H |
| 201-209 "Patient 3" | Settlement materials protected by FRE 408 | Patient included as "Sample 24" (slide 28) of 7/21/16 Settlement Presentation, bates number R/M-AZ 2016 00242 through 00252 | I |
| 210-221 "Patient 4" | Settlement materials protected by FRE 408 | Patient included as "Sample 25" - bates number AZ 2016 00253 through 00264 | J |
| 222-231 "Patient 5" | Settlement materials protected by FRE 408 | Patient included as "Sample 28" (slide 30) of 7/21/16 Settlement Presentation, bates number R/M-AZ 2016 00287 through 00295 | K |
| 232-238 "Patient 6" | Settlement materials protected by FRE 408 | Patient included as "Sample 29" - bates number R/M-AZ 2016 00296 through 00306 | L |
| 239-248 "Patient 7" | Documentation provided to DOJ in response to the CID | Patient records produced in response to CID at bates number RMA2015_000037 through 000047 | M |
| 249-258 "Patient 8" | Settlement materials protected by FRE 408 | Patient included as "Sample 34" (slide 33) of 7/21/16 Settlement Presentation - bates number R/M-AZ 2016 00340 through 00350 | N |
| 259-265 "Patient 9" | Settlement materials protected by FRE 408 | Patient included as "Sample 38" (slide 35) of 7/21/16 Settlement Presentation - bates number R/M-AZ 2016 00381 through 00390 | O |

| 266-272 "Patient 10" | Settlement materials protected by FRE 408 | Patient included as "Sample 40" - bates number R/M-AZ 2016 00401 through 00411 | P |
|---|---|---|---|

## II.    STATEMENT OF FACTS

1.    On January 6, 2015, in connection with an investigation into Rural/Metro's Medicare billing practices, the DOJ issued a Civil Investigative Demand ("CID") to Rural/Metro requesting records and transport documents for 120 individual patients.  The CID also required Rural/Metro to produce various other materials, including corporate compliance plans and documents relating to billing policies and procedures.

2.    On January 22, 2015, Relators filed their original complaint under the *qui tam* provisions of the FCA, alleging that Rural/Metro – a provider of emergency and nonemergency transportation services – submitted claims for reimbursement to Federal health care programs.  The original complaint did not identify any particular claims or specific patients who received services from Rural/Metro. *See* Dkt. #1, filed 9/22/15.

3.    On January 23, 2015, Rural/Metro agreed to produce records and documents for the 120 individuals identified in CID No. 15-01 on a rolling basis.  Between February 15 and April 3, 2015, Rural/Metro produced 184 discrete documents, comprised of 2,188 pages, in response to the CID.  The documents produced to the Government included patient transport records, as well as training materials, policies, and compliance documents.

4.    On September 25, 2015, the Court partially lifted the seal on Relators' *qui tam* complaint and permitted its disclosure to Rural/Metro.  In a letter dated September 29, 2015, the DOJ requested additional documents and information relative to a subset of forty-

58390347.1

one patients who had been identified in the CID (the "Additional Request"). *See Exhibit A*. The DOJ also provided Rural/Metro with a copy of the *qui tam* complaint and the Court's order partially lifting the seal.

5.     Rural/Metro responded to the Additional Request on November 18, 2015 with additional records and documentation pertaining to the forty-one patient subset. *See Exhibit B*.

6.     On January 5, 2016, the DOJ informed Rural/Metro that after reviewing the responsive documents, "it appear[ed] that the ambulance services Rural/Metro rendered to the patients … may have been medically unnecessary or upcoded (from basic life support to advanced life support, from non-emergent to emergent, or both)."  *See Exhibit C*. The DOJ invited Rural/Metro to provide its perspective with respect to the allegations in Relators' complaint. *Id.*

7.     In a letter dated March 30, 2016, Rural/Metro responded to the DOJ's concerns, stating that despite the final designation of the level of service received, each of the 120 patients identified by the DOJ had received necessary and important services from Rural/Metro.  *See Exhibit D*. Rural/Metro also provided additional documentation in support of the forty-one patient transport claims.  The March 30th letter was designated as a Rule 408 protected communication.

8.     On May 19, 2016, the DOJ informed Rural/Metro that despite the company's assurances regarding the necessity of the patient transport services, it was still concerned about level of transport billed to Medicare. *See Exhibit E*.  The letter included a chart outlining the DOJ's specific concerns and requested a detailed, patient-by-patient response to help "advance its investigation and assist with its intervention decision." *Id.*

58390347.1

9.     On May 25, 2016, Rural/Metro re-submitted the supporting documentation for the 41 transports that it had originally provided to the DOJ on March 30, 2016.

10.     On July 21, 2016, Rural/Metro and its attorneys met with the DOJ in the U.S. Attorney's Office in Phoenix, Arizona to discuss possible resolution of the Government's investigation.   The discussions and all information exchanged therein was confidential under Fed. R. Civ. P. 408.  Rural/Metro's presentation, which included PowerPoint slides that were each clearly marked as a "FRE 408 Confidential Settlement Communication," included a discussion of twenty individual patients identified in the DOJ's original request for documents and records.  *See Exhibit F.*

11.     During the presentation, at which Relators' counsel was present, Rural/Metro provided specific details about each of the twenty patients, including their age, reason for transport, and a description of the Government's analysis and Rural/Metro's response.[2]

12.     On September 27, 2017, the DOJ filed a notice indicating that it would *not* intervene in Relators' *qui tam* complaint.  *See* Dkt. #11, filed 9/27/16.  Subsequently, on October 7, 2016, the Court entered an order lifting the seal on Relators' FCA action. *See* Dkt. #12, filed 10/7/16.

13.     On February 16, 2017, Relators filed their First Amended Complaint ("FAC") in the District of Arizona. *See* Dkt. #30, filed 2/16/17. The FAC contained 203 *additional* allegations against Rural/Metro nearly 100 of which were based on a discussion of thirteen patients who received ambulance transport services between May 9, 2014 and September 27, 2014 (the "Patient Exemplars").  Ten of the thirteen Patient Exemplars received services

---

[2]  Rural/Metro did not provide the PowerPoint slides to Relators or their counsel, but is unaware as to whether the slides were subsequently provided to either of them by the DOJ.

58390347.1

from Rural/Metro *after* Relators left the company on August 1, 2014. *See Exhibits G through P, as identified in Figure 1.*[3]

14.     As stated, CID 15-01 required Rural/Metro to provide records and transport documents for a random sampling of 120 individual patients.  Each of the thirteen Patient Exemplars was included in the original 120-patient request.  Further, Rural/Metro provided additional, detailed information for ten of the thirteen Patient Exemplars in response to the DOJ's Additional Request of September 29, 2015.  Finally, Rural/Metro provided even more detailed information pertaining to five of the thirteen Patient Exemplars during its confidential settlement negotiations with the DOJ on July 21, 2016.

## III.    ARGUMENT

### A.     Relator has Impermissibly Included Allegations in the FAC Relating to Settlement Negotiations, Which the Court Should Strike

Rural/Metro moves to strike certain allegations in the FAC that are based on information provided to the DOJ before and during confidential settlement negotiations, as they are inadmissible under Fed. R. Evid. 408.   Specifically, Relators have attempted to usurp information regarding particular patients for whom Rural/Metro produced medical records and were included by Rural/Metro in a PowerPoint presentation which was discussed during an in-person settlement conference with DOJ in July 2016.  *See Figure 1.*

Pursuant to Rule 408, evidence of conduct or statements made in settlement negotiations is inadmissible if offered to prove liability for a claim.  The spirit and purpose of this Rule is to encourage settlement negotiations and promote the "strong public interest

---

[3] Exhibits A; C; D; E; F, G; H; I; J; K; L; M; N; O; and P have been filed under seal, as they contain Protected Health Information ("PHI"). In conjunction with this motion, Rural/Metro has submitted a proposed order granting Relators access to these materials for the sole purpose of responding to this motion.

in favor of secrecy of matters discussed by parties during settlement negotiations." *Goodyear Tire & Rubber Co. v. Chiles Power Supply, Inc.,* 332 F.3d 976 980 (6th Cir. 2003). The "primary policy reason for excluding settlement communications is that the law favors out-of-court settlements, and allowing offers of compromise to be used as admissions of liability might chill voluntary efforts at dispute resolution." *Zurich Am. Ins. Co. v. Watts Indus.,* 417 F.3d 682, 689 (7th Cir. 2005). In deciding whether Rule 408 should be applied to exclude evidence, courts must consider the spirit and purpose of the rule and decide whether the need for the settlement evidence outweighs the potentially chilling effect on future settlement negotiations." *Id.*; *see also Advanced Cardiovascular Systems, Inc. v. Medtronic, Inc.*, 265 F.3d 1294, 1308 (Fed. Cir. 2001) (noting that Rule 408 promotes "the policy in favor of protecting settlement negotiations from being admitted as evidence, thus serving to encourage settlements").

Courts have routinely held that allegations related to or based upon Rule 408 settlement negotiations are immaterial. *See e.g. Kelly v. L.L. Cool J.,* 145 F.R.D. 32, 40 (S.D.N.Y. 1992) (granting defendant's motion to strike portions of complaint that refer to settlement discussions under Rule 408 as immaterial and potentially prejudicial); *see also Ruberg v. Buth-Na Bodhaige, Inc.,* 470 F. Supp.2d 273, 279 (W.D.N.Y. 2007) (chart sent during settlement negotiations not admissible and properly stricken from the record); *Suenos, LLC v. Goldman*, No. CV10-1034-TL, 2014 WL 460965, at *6 (D. Ariz. Feb. 5, 2014) (noting that "settlement communications are, as a general rule, sacrosanct.").

Accordingly, where a party, in its pleading, alleges matters that are inadmissible under Rule 408, the allegations are properly stricken by a motion brought pursuant to Fed. R. Civ. P. 12(f). *See Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-

8

10-1013-PHX-GMS, 2011 WL 1770784, at *8–9 (D. Ariz. 2011) (striking exhibits relating to settlement negotiations under Rule 12(f) because they violated FRE 408 and were therefore immaterial); *See also*, *Fidelity National Title Company v. Law Title Insurance Company, Inc.*, No. 04-c-6382, 2005 WL 1126899, at *6 (N.D. Ill. May 3, 2005) (striking portions of complaint referring to settlement negotiations as inadmissible under Rule 408); *National Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1087 n.28 (N.D. Ill. 1995) (same); *Braman v. Woodfield Gardens Associates, Real Corp Investors*, 715 F. Supp. 226 (N.D. Ill. 1989) (same); *United States ex rel. Alsaker v. CentraCare Health Sys., Inc.,* No. Civ. 99-106, 2002 WL 1285089, at *2 (D. Minn. June 5, 2002) ("[C]ourts have routinely granted motions to strike allegations in pleadings that fall within the scope of Rule 408").

Here, the FAC contains many new allegations that are clearly based on information that Rural/Metro provided to the DOJ during confidential settlement negotiations.[4]  The exchange of this information was intended to facilitate a resolution to the Government's investigation, not to aid the Relators in bolstering their complaint which until recently lacked *any* specific allegations regarding the transportation services provided to particular patients.

To this end, Relators have referenced thirteen patients who received services from Rural/Metro during a four month span in 2014. *See* FAC ¶¶ 178-285.  At least five of those patients were discussed in great detail during a settlement conference between Rural/Metro

---

[4] While the 2009 FERA amendments to the FCA allow the DOJ to share certain information obtained through CIDs with the relator, the dissemination of CID materials is only to occur where: "the Attorney General or designee determine it is necessary *as part of any false claims act investigation*." *See* 31 U.S.C. § 3733(a)(1)(D) [emphasis added].  In other words, sharing information with the relator is intended to benefit the government (not the relator) and help inform the government's investigation and ultimate decision regarding whether or not to intervene in a given case.

and the DOJ on July 21, 2016. *See Figure 1*.  The patients were identified by name and date-of-service in a PowerPoint that was provided to the Government during Rural/Metro's presentation.  *See Exhibit F*.  Each page of the presentation was conspicuously marked with the phrase: "FRE 408 Confidential Settlement Communication." *Id*. The presentation and the PowerPoint provided to DOJ also contained an extensive discussion of each patient's clinical condition, and why Rural/Metro believed that reimbursement for the transportation in question was justified.

Notably, each of these five patients received transportation services *after* the Relators stopped working for Rural/Metro on August 1, 2014, (FAC ¶¶ 14-16) such that there is no plausible explanation for Relators having any knowledge regarding the five patients, aside from their transparent efforts to coopt materials provided by Rural/Metro to DOJ in furtherance of a settlement.  It is evident that Relators took the information provided by Rural/Metro – which was provided to the Government in response to CID 15-01 with the intention of facilitating a resolution to the DOJ's investigation – and repurposed it for their *own* benefit.  For example, it is not difficult to determine that "Patient 1" included in the FAC is the same as "Sample 20" from Rural/Metro's presentation to DOJ.  Compare FAC ¶¶ 178-188 with *Exhibit F* at slide 25.

Relators' use of this information to strengthen their complaint runs counter to the spirit and purpose of this Rule 408, which is to encourage settlement negotiations.  If such a ploy were allowed to go unchecked, defendants in FCA cases would have no incentive to participate in such negotiations, for fear that information they provide could be used against them by a relator (or included in an amended complaint) if the DOJ declined to intervene.  Applying these principles, the paragraphs in the FAC that rely on information obtained by

10

the Government in contemplation of and during confidential settlement communications are barred under Rule 408, and should be stricken from the FAC pursuant to Fed. R. Civ. P. 12(f), as they are immaterial, impertinent, and prejudicial.

**B.      Relators Cannot Use Information Learned Through The Government's Investigation of Rural/Metro to Supplement Deficient Allegations in Their Complaint**

In an attempt to satisfy Fed. R. Civ. P. 9(b)'s heightened pleading standard, Relators also pirated important details from documents and transport records produced by Rural/Metro in response to the Government's CID, and used that information to amend their complaint.  In particular, and as discussed above, the FAC contains several new allegations regarding thirteen patients who received services from Rural/Metro during a four month period in 2014.  These allegations, which were not in the original complaint, were informed by medical records and other documents provided to the Government as part of its investigation into Rural/Metro's billing practices, and in contemplation of potential settlement negotiations.  Courts have long held that tactics designed to circumvent Rule 9(b)'s pleading requirements are impermissible under the FCA.

Furthermore, it is well established that the *qui tam* provisions of the FCA are designed to provide a bounty to relators who bring *personal* knowledge of wrongdoing to the Government's attention.  *U.S. ex rel Bogina v. Medline Industries,* 809 F.3d 365, 367 (7th Cir. 2016).  In this case, the Relators did not bring credible information to the attention of the Government.   To the contrary, the information they relied on to bolster their complaint was taken directly from the more than 2,000 pages of records that Rural/Metro provided to the DOJ to assist with its intervention decision.  Relators attempt to benefit from information that they had no hand in providing to the Government is inappropriate and

58390347.1

impermissible under the FCA.  For the reasons set forth below, the Court should strike any facts obtained through the CID as a result of Rural/Metro's cooperation with the DOJ.

    1.   <u>Rule 9(b) prohibits the use of information learned through discovery or other similar means</u>

Courts have warned of situations where "a plaintiff does not specifically plead the minimum elements of their allegation, [and is able] to learn the complaint's bare essentials through discovery and may needlessly harm a defendants' goodwill and reputation by bringing a suit that is, at best, missing some of its core underpinnings, and, at worst, are baseless allegations used to extract settlements."  *United States ex. re. Clausen v. Laboratory Corp. of Am., Inc.* 290 F.3d 1301 (11th Cir. 2002).  "This is especially so in cases involving the False Claims Act, which provides a windfall for the first person to file and permits recovery on behalf of the real victim, the Government."  *Id.* To prevent such situations from occurring, courts have long held that a relator may not use discovery to overcome pleading hurdles.  In *U.S. ex rel. Russell v. Epic Healthcare Management Group*, for example, the Fifth Circuit affirmed the dismissal of a relator's complaint under Rule 9(b), holding that to do otherwise would give relator a "ticket to the discovery process that the [FCA] does not contemplate." 193 F.3d 304, 309 (5th Cir. 1999).  Likewise, the First Circuit observed that "allowing a relator to plead generally at the outset and amend the complaint at the 12(b)(6) stage after discovery would be at odds with the FCA's procedures for filing a *qui tam* action and its protections for the government (which is, of course, the real party in interest in a *qui tam* action)." *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.,* 360 F.3d 220, 231 (1st Cir. 2004), *abrogated in part on other grounds by U.S. ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928 (2009).  It noted that "the reluctance of courts to

permit *qui tam* relators to use discovery to meet the requirements of Rule 9(b) reflects, in part, a concern that a *qui tam* plaintiff, who has suffered no injury in fact, may be particularly likely to file a suit as 'a pretext to uncover unknown wrongs.'" *Id*.; *see also U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 560 (8th Cir. 2006) (allowing a relator to amend after discovery "is inconsistent with the relator's procedural obligations under the FCA and with the FCA's protections for the government").

The same principles that govern the use of information learned through discovery logically apply to government-subpoenas and CIDs with equal force.  Like formal discovery, CIDs are investigative, fact-finding tools that are subject to the Federal Rules of Evidence and Civil Procedure and exist solely for the Government's benefit.  In the context of a whistleblower lawsuit, CIDs and discovery are both issued *after* the lawsuit has been filed under seal, and there is as much risk for a relator to amend his complaint with information learned through discovery as there is in the context of a CID.  It is logical to conclude, therefore, that a complaint should not be amended using information provided directly by a defendant to the Government in response to a CID.

      2.    <u>Relators' efforts to use information outside their own knowledge to amend their complaint is improper</u>

Relators' misappropriation of facts learned through the Government's investigation and CID also raises public policy concerns typically expressed in the context of the FCA's public disclosure bar.  While the information Relators obtained through the CID may not have been *publically* disclosed, their use of that information is nevertheless at odds with the principles and policy considerations underlying the bar.  Indeed, the main goal of the public disclosure bar is to discourage "parasitic lawsuits in which those with no independent

knowledge of fraud use information already available to the government to reap rewards for themselves without exposing any previously unknown fraud." *Seal 1 v. Seal A,* 255 F.3d 1154, 1158 (9th Cir. 2001).  Here, the nature of Relators' tactics are unquestionable, as they pilfered information obtained through the CID and used it to supplement their complaint, even though the Government had already obtained the same information through its own investigative efforts and relied upon it in deciding *not* to intervene in Relators' lawsuit. Relators had neither direct nor independent knowledge of the information learned through the DOJ's CID.  In fact, ten of the thirteen patients identified in the amended complaint received ambulance services from Rural/Metro *after* Relators parted ways with the company on August 1, 2014. *See* Dkt. 30 at Par. 178-272 (Patients 1 through 10).  While the remaining three patients received services during Relators' tenure at Rural/Metro,[5] the allegations pertaining to those individuals stand in stark contrast to the allegations that are based on information Relators gleaned from CID disclosures and Rule 408 settlement discussions.  A simple comparison of Patients 1 through 10 and Patients 11 through 13 reveals that Relators – when left to their own devices – managed to scrounge up only anemic and wholly deficient factual allegations to support their claims.  Relators certainly did not confer any additional benefit upon the government by including those allegations, or by parroting information that was already known to the government.  *See U.S. ex rel. Biddle v. Bd. of Trustees of Leland Stanford, Jr. Univ.,* 161 F.3d 533, 538 (9th Cir. 1998) (holding that relator may not be rewarded where allegations of fraud were already known to the government and no new benefit was conferred upon it).

---

[5] *See* Dkt. 30, Par.273-277 ("Patient 11"); Par. 278-281 ("Patient 12"); and Par. 282-285 ("Patient 13").

### 3.   The Court should strike all facts learned through the DOJ's CID

Accordingly, Rural/Metro requests that the Court strike all allegations in the FAC that are based on information learned by Relators through the Government's investigation and CID, pursuant to Rule 12(f).  Under Rule 12(f), a court may strike from a pleading "any redundant, immaterial, impertinent, or scandalous matter," either on motion made by a party or *sua sponte*. Fed. R. Civ. P. 12(f). A motion to strike should be granted when "the matter sought to be omitted has no possible relationship to the controversy, may confuse the issues, or otherwise prejudice a party." *Reyher v. Trabs World Airlines Inc.*, 881 F. Supp 574, 576 (M.D. Fla. 1995). Material learned through discovery is "immaterial" because it cannot cure a FCA complaint's failure to satisfy Rule 9(b), and any facts learned through discovery or similar fact-finding tools confuse the issues and prejudice Rural/Metro. *See United States State of Florida ex rel. Bingham v. HCA, Inc.*, No. 13-23671-CIV, 2016 WL 6027115, at *5 (S.D. Fla. Oct. 14, 2016).

The FAC is littered with allegations based on information obtained through Rural/Metro's CID responses, including the thirteen Patient Exemplars. *See i.e.* FAC ¶¶ 239-248. In addition, and as described above Rural/Metro has provided Figure 1, which summarizes each of the allegations based on Relator's use of patient records and information provided to DOJ pursuant to the CID.

58390347.1

## IV.   CONCLUSION

For the foregoing reasons, Rural/Metro respectfully requests that the Court strike the allegations contained in Relators' First Amended Complaint at set forth in Exhibit A, pursuant to Fed. R. Civ. P. 12(f).[6]

Respectfully submitted this 24th day of April, 2017.

Polsinelli PC

By:  *R. Ross Burris, III*

CityScape, One E. Washington St., Ste. 1200
Phoenix, AZ 85004
(602) 650-2000

*Attorneys for Defendants*

## CERTIFICATE OF SERVICE AND LODGING

I hereby certify that on April 24, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants listed for this matter.

*/s/ D. Serakoff*
*A Polsinelli Employee*

---

[6] To the extent that the Court allows oral argument on Rural/Metro's Motion to Strike Relators' First Amended Complaint, Rural/Metro respectfully requests that it be provided with an opportunity to file a reply brief following the submission of a response by Relators.

58390347.1