Richard J. Harris, AZ Bar #013859
Richard J. Harris Law, P.C.
4000 Hickory Fairway Dr.
Woodstock, GA 30188
Telephone (678) 733-1408
rjharrislaw@gmail.com

David C. Larkin, AZ Bar #006644
DAVID C. LARKIN, P.C.
6909 West Ray Road, Suite 15-133
Chandler, Arizona 85226
Telephone (480) 491-2900
david@davidlarkinlaw.com

James B. Helmer, Jr. (pro hac vice)
Robert M. Rice (pro hac vice)
Erin M. Campbell (pro hac vice)
James A. Tate (pro hac vice)
Helmer, Martins, Rice
 & Popham Co., L.P.A.
600 Vine Street, Suite 2704
Cincinnati, OH 45202
Telephone (513) 421-2400
support@fcalawfirm.com

Attorneys for Relators

**UNITED STATES DISTRICT COURT**

**DISTRICT OF ARIZONA**

| | |
|---|---|
| **United States of America** *ex rel.* **Ralph Vassallo and Laura Spahn**, <br><br>Relators,<br><br>v.<br><br>**Rural/Metro Corporation**, et al.<br><br>Defendants. | CV-15-00119-PHX-SRB <br><br> **RELATORS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO STRIKE (Doc. 50)** <br><br> **(UNDER SEAL FOR *EX PARTE, IN CAMERA* REVIEW)** <br><br> Assigned to the Honorable Susan R. Bolton |

## I. INTRODUCTION

This is a False Claims Act case (31 U.S.C. § 3729, *et seq.*) brought by Relators Ralph Vassallo and Laura Spahn ("Relators") alleging that Defendants ("Rural/Metro") overcharged the Government for ambulance services provided to patients covered by various Government healthcare programs. Rural/Metro's misconduct is simply stated. To increase cash flow, Rural/Metro intentionally eliminated quality control measures from its billing

1 operations, outsourced its billing to inexperienced coders, and implemented an unreliable
2 billing software that generated inflated bills.  Relators, who worked as Rural/Metro billing
3 manager and billing supervisor, identified these problems for management on numerous
4 occasions.  Rural/Metro ignored the problems and submitted the inflated invoices anyway,
5 and then continued to use the inexperienced coders and faulty billing software.

6 Hoping to avoid answering for such misconduct, Rural/Metro now asks this Court to
7 strike from Relators' Amended Complaint ten of the specific examples of Rural/Metro's false
8 claims (which encompass ¶¶ 178-272 of the Amended Complaint).  According to
9 Rural/Metro, Relators improperly "pilfered" such information, which Rural/Metro says was
10 sent to the Government only pursuant to settlement talks, and use of it is prohibited by
11 Evidence Rule 408.  In the alternative, Rural/Metro claims that both Civil Rule 9(b) and
12 "public policy" concerns underlying the False Clams Act support striking the information.
13 Rural/Metro is mistaken on all issues.

14 The examples of Rural/Metro's misconduct were not produced voluntarily in settlement
15 discussions, but were instead surrendered by Rural/Metro pursuant to a Government Civil
16 Investigative Demand.  The Government shared the information with Relators—as expressly
17 permitted by the False Claims Act—while Relators were working with the Government to
18 investigate Rural/Metro's fraud.  And even if the documents were produced within the
19 context of settlement discussions, Rule 408 does not prohibit Relators' use of them.  Rural/
20 Metro cites no case supporting such a result, nor does Rural/Metro cite any case justifying
21 its alternative bases (Civil Rule 9(b) and "public policy") for striking this information.

22 Rural/Metro's Motion to Strike should be denied.  Rural/Metro knew before filing the
23 motion that the Government gave the contested information to Relators long before any
24 alleged settlement discussions.  But, apparently realizing that Relators' Amended Complaint
25 is sufficiently pled, Rural/Metro hopes to have this Court re-write the Amended Complaint
26 so that Rural/Metro might then file an out-of-time challenge to a shorter pleading.  This
27 strategy should be rejected.  Relators incorporate by reference the arguments made in the
28 Government's Statement of Interest filed at Doc. 57-2 and 57-3 and lodged at Doc. 58 and

1  58-1. *See,* Local Rule 7.1(d)(1).

2  **II. STATEMENT OF FACTS**

3  In January 2015, the Government served Defendants with a Civil Investigative Demand
4  ("CID") under authority of the False Claims Act (31 U.S.C. § 3733(a)(1). *See*, EX A,
5  Declaration of Richard J. Harris ("Harris Decl.") at ¶ 2. Between February and November
6  2015, Rural/Metro produced and supplemented its production of documents responsive to
7  the Government's CID, including transport claims, dispatch information and associated
8  patient medical documentation. *Id.* at ¶ 3. The documents Rural/Metro produced during this
9  2015 period were bates numbered RMA-2015 00001-02483. *Id.* at ¶ 4. Following this first
10 period of document production, Rural/Metro supplemented its response to the Government's
11 CID between March and May 2016 with an additional production of documents. *Id.* at ¶ 5.
12 The documents produced in 2016 were bates numbered R/M AZ-2016 00001-00432. *Id.* at
13 ¶ 6. The Government shared with Relators copies of all batesed documents produced by
14 Rural/Metro in 2015 and 2016. *Id.* at ¶ 7.

15 On July 21, 2016, Relators' counsel, Richard Harris, participated in a meeting between
16 the Government and Rural/Metro representatives in Phoenix, AZ. *Id.* at ¶ 8. During the
17 course of that meeting, Rural/Metro used PowerPoint slides to present information from
18 documents that had already been produced in connection with the CID. *Id.* at ¶ 9.
19 Rural/Metro did not produce any new documents at the July 21, 2016 meeting. *Id.* at ¶ 10.
20 Rural/Metro did not provide Relators' counsel with a copy of Rural/Metro's PowerPoint
21 presentation—until it was produced as part of this Motion to Strike—despite Rural/Metro
22 having told Relator's counsel during the July 21, 2016 meeting that Rural/Metro would
23 provide him a copy. *Id.* at ¶¶ 11 and 12.

24 Following the unsealing of this case, Relators amended their Complaint to provide
25 additional specificity and detail to their claims. Doc. 30. In the Amended Complaint
26 Relators included additional factual information based on the claims, dispatch information
27 and medical documentation that Rural/Metro produced and that was responsive to the
28 Government's CID. *Id.* at ¶ 13. None of this additional specificity and detail was based on

1  Rural/Metro's PowerPoint presentation or anything communicated in the July 21, 2016
2  meeting. *Id.* at ¶ 14. Before filing the Amended Complaint, Relator secured permission from
3  the Government to use the information produced by Rural/Metro in response to the CID to
4  provide additional detail and examples of Rural/Metro's false claims. *Id.* at ¶ 15.

## III. ARGUMENT

"Motions to strike are generally disfavored by courts."[1] They "will usually be denied unless the allegations in the pleading have no possible relation to the controversy, and may cause prejudice to one of the parties."[2] "A court should not grant a motion to strike unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation."[3] "Any doubt regarding the redundancy, immateriality, impertinence, scandalousness or insufficiency of a pleading must be decided in favor of the non-movant."[4] The moving party "bears the burden of persuading this Court that the relevant paragraphs should be stricken."[5]

### A. Fed.R.Evid. 408 Provides No Basis To Strike The 10 Examples Of Rural/Metro's False Claims (Amended Complaint ¶¶ 178-272).

Rural/Metro acknowledges that the claims and medical information that Relators used in the Amended Complaint came from Rural/Metro's response to the Government's CID, not from the July 21, 2016 "settlement" meeting or the PowerPoint presentation made at the meeting. Doc. 50 at pp. 6-7. Yet Rural/Metro argues that merely because some of the CID documents were discussed at the meeting, those documents must now be treated as "settlement" information that must be stricken pursuant to Evidence Rule 408. Doc. 50 at p. 7. This conclusion does not make sense. The CID documents are not "settlement"

---

[1] *Bogazici Hava Tasimaciligi A.S. v. McDonnell Douglas Corp.*, 932 F.2d 972, 1991 WL 73738 *2 (9th Cir. 1991) (citing authority).

[2] *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, CV-09-01531-PHX-JAT, 2010 WL 3034880, at *3 (D. Ariz. Aug. 3, 2010) (citing 5C Wright & Miller, Federal Practice and Procedure § 1380 (3d ed. 2004)).

[3] *Id.* (quoting authorities, internal quotations omitted).

[4] *Id.* (citing authority).

[5] *Id.* (citing authority).

1  information. They are claims, dispatch information and associated medical documents
2  created years ago that evidence Rural/Metro's misconduct. Indeed, Rural/Metro itself does
3  not contend that Relators pled any true "settlement" information—offers of compromise,
4  admissions of liability—in their Amended Complaint, whether from Rural/Metro's
5  PowerPoint presentation or elsewhere.
6  Incorrect in its characterization of the CID materials, Rural/Metro is equally incorrect in
7  its conception of Evidence Rule 408. The information responsive to the CID is fact. Rule
8  408 does not automatically immunize facts from admission just because they may have been
9  mentioned in compromise negotiations. Nor, of course, would Rule 408 support striking
10 information (five of the examples in the Amended Complaint) that were not even discussed
11 in compromise negotiations. Rule 408 states:

> Rule 408. Compromise Offers and Negotiations
>
> (a) Prohibited Uses. Evidence of the following is not admissible — on behalf of any party — either to prove or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or a contradiction:
>
> (1) furnishing, promising, or offering — or accepting, promising to accept, or offering to accept — a valuable consideration in compromising or attempting to compromise the claim; and
>
> (2) conduct or a statement made during compromise negotiations about the claim — except when offered in a criminal case and when the negotiations related to a claim by a public office in the exercise of its regulatory, investigative, or enforcement authority.
>
> (b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

**1.      Fed.R.Evid. 408 Does Not Bar Admission of Underlying Facts**.

Nothing in Rule 408 states that **facts** discussed in compromise offers and negotiations are inadmissible. Prior to 2006, Rule 408 even explicitly said so: "This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the court of compromise negotiations." The comments to the 2006 amendment to Rule 408 explain that this sentence was removed as redundant:

> The sentence of the Rule referring to evidence "otherwise discoverable" has been deleted as superfluous. . . . The intent of the sentence was to prevent a party from trying to immunize admissible information, such as a pre-existing document, through the pretense of disclosing it during compromise negotiations. . . . But even without the sentence, ***the Rule cannot be read to protect pre-existing information simply because it was presented to the adversary in compromise negotiations***. (Emphasis added).

The plain text of Rule 408 is clear: Defendants' use of pre-existing medical records and other information in compromise negotiations does not implicate Rule 408. Relators' later use of use of that same information is appropriate. None of Defendants' cited cases holds that Rule 408 bars admissibility of pre-existing facts.[6] The law is exactly the opposite.[7]

### 2. Fed.R.Evid. 408 Does Not Prohibit Pleading Inadmissible Evidence.

Rule 408 is narrow. Offers of compromise and statements made in settlement negotiations are inadmissible evidence. But since allegations in a Complaint are not evidence, the majority of courts have ruled that nothing in the text of Rule 408 bars a party from pleading such information in a Complaint:

> Rule 12(f) governs striking material from pleadings, not evidence. . . Even if the statements are later determined to be inadmissible ... they need not be stricken from the pleadings.
> . . .

---

[6] Doc. 50 at p. 8. *Kelly v. L.L. Cool J.*, 145 F.R.D. 32, 40 (S.D.N.Y. 1992) dealt with actual settlement discussions. In *Ruberg v. Buth-Na Bodhaige, Inc.*, 470 F. Supp.2d 273, 279 (W.D.N.Y. 2007), the target of the motion to strike was a chart prepared by defense counsel's paralegal that was provided to plaintiff for purposes of settlement negotiations and the plaintiff had not reviewed underlying raw data). And in *Suenos, LLC v. Goldman*, No. CV10-1034-TL, 2014 WL 460965, at *3, 5 (D. Ariz. Feb. 5, 2014), in violation of a court order, a brief referenced a settlement offer and attached a settlement memorandum. The *Suenos* decision was reversed on appeal on the point. *Suenos LLC v. Goldman*, 633 Fed. Appx. 874, 879 (9th Cir. 2015).

[7] *Eaglepicher Mgt. Co. v. Fed. Ins. Co.*, CV 04-870PHXMHM, 2008 WL 1776517, at *3 n.1 (D. Ariz. Apr. 15, 2008) ("'[s]tatements of fact made during settlement negotiations ... are admissible ...' Fed.R.Evid. 408 advisory committee's note (1974 Enactment). If the Court wanted to make 'facts' conveyed in settlement negotiations inadmissible, it would have done so. *Id*."); 23 Wright & Graham, Federal Practice And Procedure § 5310, at 252–53 (1st ed.) ("It is well-established under most of the privileges for confidential communications that the privilege applies to the communication only, not to the underlying facts. Courts have had no difficulty deciding that one cannot immunize pre-existing documents by utilizing them as a medium of communication to an attorney, an analogy that seems apt under the privilege rationale for Rule 408."), *see also id*. at 261 ("A statement made at another time and 'presented' during compromise negotiations is not made inadmissible by Rule 408.").

> Disputes over Rule 408 should be resolved as evidentiary matters with motions *in limine* rather than prematurely in Rule 12(f) motions.
> . . .
> The Court finds that Rule 408 is an inappropriate means to strike paragraphs 45-49 of Plaintiff's proposed amended complaint. At this stage of the litigation and given Plaintiff's arguments that these statements will not actually be barred by Rule 408, the Court will not use the Rules of Evidence as a bar for preemptively striking Plaintiff's proposed amended complaint.[8]

While Rural/Metro cites cases wherein courts strike allegations in pleadings, none are on point here. One of those cases does not even mention Rule 408, and in the other cases, the stricken allegations and exhibits involved actual offers to compromise or liability admissions, not factual information pertaining to the underlying case.[9] Rural/Metro cites no case in which a court struck pre-existing factual information later referenced in settlement negotiations.

### 3. Relator's Use of Materials Rural/Metro Was Required to Provide to the Government in Response to a CID Is Permissible.

Without citation, Rural/Metro argues that Relators' use of the underlying medical records for 5 of the 10 patients referenced in Rural Metro's PowerPoint presentation is "counter to

---

[8] *TriQuint Semiconductor, Inc. v. Avago Techs. Ltd.*, CV-09-01531-PHX-JAT, 2010 WL 3034880, at *4 (D. Ariz. Aug. 3, 2010) (citing authorities, internal quotations omitted). *Accord*, *Thompson v. Target Corp.*, CV12-10-MWF (MRWX), 2012 WL 12883954, at *1 (C.D. Cal. Aug. 2, 2012); *Gallagher v. Funeral Source One Supply and Equip. Co., Inc.*, 14-CV-115-PB, 2015 WL 773737, at *3 n.2 (D.N.H. Feb. 24, 2015) (the "majority of courts" have concluded that Rule 12(f) does not permit allegations to be stricken soley because they are based on potentially inadmissible evidence) (citing authorities). *See also Papas v. Bercovici*, CV07-2338PHX-JAT, 2008 WL 2687441, at *7 (D. Ariz. July 2, 2008) (denying a motion to strike emails attached to a brief, explaining that Rule 408 does not create a "privilege" for settlement discussions; they are just "inadmissible at trial for certain uses").

[9] Doc. 50 at pp. 8–9. In four of the cases, the stricken allegations were actual liability admissions or other settlement communications and negotiations—none involved underlying factual information. *Ogundele v. Girl Scouts-Arizona Cactus Pine Council, Inc.*, No. CV-10-1013-PHX-GMS, 2011 WL 1770784, at *8–9 (D. Ariz. 2011); *Fidelity National Title Company v. Law Title Insurance Company, Inc.*, No. 04-c-6382, 2005 WL 1126899, at *1, 3, 6–7 (N.D. Ill. May 3, 2005); *Braman v. Woodfield Gardens Associates, Real Corp Investors*, 715 F. Supp. 226, 230 (N.D. Ill. 1989); *U.S. ex rel. Alsaker v. CentraCare Health Sys., Inc.*, No. Civ. 99-106, 2002 WL 1285089, at *2 (D. Minn. June 5, 2002). In the fifth case, *National Org. for Women, Inc. v. Scheidler*, 897 F. Supp. 1047, 1087-88 & n.28 (N.D. Ill. 1995), the court struck portions of a complaint that fail to allege violent or criminal actions as lacking in merit. No mention is made of Rule 408 or compromise negotiations in this opinion.

1 the spirit and purpose of Rule 408" because Rural/Metro provided these documents to the Government pursuant to a CID. Doc. 50 at pp. 9–11. Rule 408 has no applicability to the disclosures that were compelled by the Government's CID.

The Government's CID authority is not a settlement device. Rather, it is a statutory investigatory tool by which the Government may demand production of information "relevant to a false claims law investigation . . . before commencing a civil proceeding" under the False Claims Act. 31 U.S.C. § 3733(a)(1). Persons in receipt of CIDs for documents are required to "make the material available." 31 U.S.C. § 3733(f)(2). A judicial procedure may be brought for failure to comply. 31 U.S.C. § 3733(j). Thus, Rural/Metro produced the medical records for these patients because it was required by law to comply with the Government's CID, not because it was engaging in a settlement negotiation.

Furthermore, the Government's disclosure to Relators of information that it obtained by the CID is explicitly and textually permitted under the False Claims Act. 31 U.S.C. § 3733(a)(1) ("Any information obtained by the Attorney General or a designee of the Attorney General under this section may be shared with any qui tam relator if the Attorney General or designee determine it is necessary as part of any false claims act investigation.")

The primary House sponsor of the 1986 and 2009/2010 False Claims Act amendments, Representative Howard Berman, has explained that the CID provision was amended in 2009 to clarify that the Government may disclose responsive material to *qui tam* relators:

> Section 4(c) also clarifies that the Attorney General or his designee **may disclose CID material to the qui tam plaintiff when necessary to further a False Claims Act investigation or <u>litigation</u>**. Qui tam plaintiffs are not only parties to the False Claims Act proceeding, they often are fact witnesses or experts in the subject matter under investigation. Accordingly, more often than not, it will be necessary for the Department of Justice to show information obtained through CIDs to the relator in order to investigate or litigate the allegations effectively.[10]

Thus, Relator's use of the CID documents in this litigation was foreseen and considered desirable by Congress. After all, the very purpose of the *qui tam* provisions of the False

---

[10] 155 Cong. Rec. E1299 (2009) (remarks of Rep. Berman) (emphasis added).

1  Claims Act is to allow relators to work with the United States in a public-private
2  partnership.[11] Accordingly, courts have routinely held relators may use documents produced
3  by defendants in response to Civil Investigative Demands when amending their complaints.[12]

4  Relators did not "pilfer" the Government's CID information to use in the Amended
5  Complaint, and their use of that information is not a "ploy." Rather, Relators were lawfully
6  given access to the documents by the Government as explicitly allowed by the False Claims
7  Act. Then, with the express permission of the United States—as envisioned by
8  Congress—Relators were permitted to use these CID materials to amend their Complaint.

**B.    Relators Can Use Information From The Government's Investigation In The Amended Complaint.**

Though Rural/Metro's motion is based primarily on Rule 408, Rural/Metro does offer two additional reasons to justify striking information from the Amended Complaint that Relators learned from the Government's under seal investigation: (1) Rural/Metro says that Civil Rule 9(b) somehow precludes such use; and (2) Rural/Metro says that "public policy concerns" underlying the False Claims Act should prohibit such use. Doc. 50 at p. 11-15. No court has ever placed such a restriction on a Relator's use of information shared by the Government.

Rural/Metro fully acknowledges the novelty of its request. Rural/Metro is openly asking this Court to create a new restriction on a Relator's ability to use information to prosecute a defendant for False Claims Act violations. This Court should decline such an invitation to weaken the effectiveness of the Act.

---

[11] 132 Cong. Rec. 28580 (1986) (statement of Sen. Grassley). Contrary to Rural/Metro's suggestion (Doc. 50 at p. 9 n.4), given that Congress has incentivized False Claims Act relators to bring and prosecute these actions, fruits of a CID can benefit both the United States and Relators.

[12] *U.S. ex rel. King v. Solvay S.A.*, CIV.A. H-06-2662, 2010 WL 2851725, at *1 (S.D. Tex. July 20, 2010); *U.S. ex rel. Banigan v. Organon USA Inc.*, CIV.A. 07-12153-RWZ, 2011 WL 794915, at *1 (D. Mass. Feb. 28, 2011) (denying as premature a relators' motion to plead info from subpoenaed documents in their third amended complaint, but noting authorities holding that this is permissible), 883 F. Supp. 2d 277, 293 (D. Mass. 2012) (documents produced in response to Texas attorney general's CID and then used by Relators in Third Amended Complaint were not a public disclosure).

### 1.   Civil Rule 9(b) does not preclude Relators' use of the CID information.

Civil Rule 9(b) is a pleading standard that, as Rural/Metro notes, requires False Claims Act complaints to be pled with sufficient "particularity." Doc. 50 at p. 12-13. Application of Rule 9(b) is straightforward enough: Complaints that have sufficient "particularity" survive, and those that do not are dismissed. Rural/Metro invokes Rule 9(b), but not for it to be applied in the usual way. Rural/Metro does not ask this Court to review the Amended Complaint, as written, for compliance with Rule 9(b). Instead, Rural/Metro claims that there is a way to read Rule 9(b) caselaw so that Rule 9(b) can first be used as a tool to "strike" parts of Relators' Amended Complaint that are based upon the Government's CID information. Doc. 50 at p. 11-13. Rural/Metro is mistaken. Rural/Metro has misconstrued Rule 9(b) case law.

Rural/Metro's logic proceeds as follows. First, Rural/Metro highlights statements from various Rule 9(b) cases wherein a few courts refuse to allow Relators the benefit of formal civil discovery in order to add "particularity" to satisfy Rule 9(b).[13] Then, Rural/Metro claims that since "discovery" is not allowed before a pleading is reviewed before Rule 9(b) compliance, no "discovery" is allowed in Relators' Amended Complaint. While discovery in this case has not begun, Rural/Metro claims that the Government's CID is the same thing—it is a "fact-finding tool" just like formal civil "discovery." Thus, for Rural/Metro, this CID "discovery" is not allowed in the Amended Complaint. Doc. 50 at 13. Rural/Metro's argument fails at each step.

First, Rural/Metro's cases are not about preventing Relators from using information that they already have. Instead, those case are about protecting defendants from the rigors of formal civil discovery when a Relator's allegations were insufficient. Each case cited by

---

[13] Doc. 50 at p. 12-13, *citing U.S. ex. rel. Clausen v. Laboratory Corp. of Am., Inc.* 290 F.3d 1301 (11th Cir. 2002), *U.S. ex rel. Russell v. Epic Healthcare Management Group*, 193 F.3d 304, 309 (5th Cir. 1999) (*abrogated in part on other grounds by U.S. ex rel. Eisenstein v. City of N.Y.*, 556 U.S. 928 (2009), *U.S. ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) *and U.S. ex rel. Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 560 (8th Cir. 2006).

Rural/Metro simply involved a Relator whose complaint was found to be deficient under Rule 9(b), and a defendant that was not compelled to produce discovery for the Relator to use to overcome the Rule 9(b) deficiencies.[14]

Moreover, Relators' Amended Complaint has not even been challenged under Rule 9(b), much less found deficient. And formal discovery had not begun. So the entire reasoning of Rural/Metro's cases—that a Rule 9(b) deficiency cannot be cured by forcing a defendant to produce discovery for Relator's use—is wholly irrelevant. No Rule 9(b) deficiency exists, and Rural/Metro is not being forced to produce anything.

Finally, the Government CID information is absolutely not the same as formal discovery under the Civil Rules. Formal civil discovery is permitted as a result of pending litigation, and such discovery in this case has not yet begun. The Government's CID, on the other hand, is independent of discovery in civil litigation. And Rural/Metro long ago responded and produced documents. So, again, the reasoning from the cases cited by Rural/Metro is inapplicable. Rule 9(b) might save a defendant from formal civil discovery where a pending complaint is found deficient. But Rule 9(b) could not possibly save Rural/Metro from producing documents pursuant to the CID because a CID is not tied to a civil pleading.

In sum, Rural/Metro's effort to exclude information obtained by Relators from the Government has no support. There is, though, one recent case that thoroughly addresses the issue, and squarely rejects it.[15] The *Underwood* court began by noting the utter lack of support for defendant's request: "[Defendant] thus asks me to disallow qui tam amendments purportedly based on documents that Relator obtained from the DOJ because those

---

[14]Contrary to Rural/Metro's argument, information obtained from formal litigation discovery responses may be used to amend a complaint. *U.S. v. Omnicare, Inc.*, 2013 U.S. Dist. LEXIS 75696, *17-18 n.9 (N.D. Ga. 2013) (allowing a Third Amended Complaint based on facts learned in discovery); *see also, Remmes v. Int'l Flavors & Fragrances, Inc.*, 453 F. Supp. 2d 1058, 1071-72 (N.D. Iowa 2006) ("no prohibition on the use of the material unearthed during discovery"); *U.S. ex rel. Knapp v. Calibre Sys.*, 2012 U.S. Dist. LEXIS 63456 (C.D. Cal. 2012) (relator may amend with information learned through discovery); *M.H. v. Cty. of Alameda*, 2012 U.S. Dist. LEXIS 168412, at *8 (N.D. Cal. 2012) (same).

[15] *U.S. ex rel. Underwood v. Genentech*, 720 F. Supp.2d 671 (E.D.Pa. 2010).

1 documents may have been provided to the DOJ by [Defendant]. Once again, [Defendant's]
2 request has no legal support."[16] The *Underwood* court proceeds to explain that such a course
3 would decrease the effectiveness of the False Claims Act:

> In these circumstances, I conclude that requiring courts to bar amendments based on evidence obtained indirectly from the qui tam defendant could effectively preclude any discovery-based amendments, thus significantly impugning private enforcement of the False Claims Act. Once again, I am not prepared to write part of the statute out of existence.[17]

7 While this case was under seal, Relators worked with the Government to investigate
8 Rural/Metro's misconduct. As part of that cooperative effort, Relators were given
9 information by the Government that was then included in the Amended Complaint. There
10 is no basis to strike such information.

11 **2. No "public policy concerns" prevent Relators use of the CID information**

12 Having failed to cite any applicable authority for its Evidence Rule 408 or Civil Rule 9(b)
13 assertions, Rural/Metro concludes its brief with an even broader, and equally unsupported,
14 effort to preclude Relators' use of information. According to Rural/Metro, Evidence Rule
15 408 and Civil Rule 9(b) are not really needed at all to justify striking the CID information
16 from the Amended Complaint. For Rural/Metro, Relators cannot include **any** information
17 in the Amended Complaint unless they have "independent" knowledge of it. Doc. 50 at p.
18 14. Rural/Metro cites no case adopting this strange conclusion. As with its Rule 9(b)
19 argument, Rural/Metro's proposition is based on a misconstruction of cases addressing an
20 entirely different issue—this time, cases addressing the False Claims Act's "public
21 disclosure/original source" provisions. There is no merit to Rural/Metro's argument.

22 The "public disclosure" provision of the False Claims Act provides that actions are
23 subject to dismissal if they are based upon certain narrow types of "public" information,
24 unless the Relator is an "original source" of such information.[18] Rural/Metro concedes that

---

[16] *Underwood*, 720 F. Supp.2d at 680-681.

[17] *Underwood*, 720 F. Supp.2d at 681.

[18] 31 U.S.C. § 3730(e)(4). An "'original source' means an individual who either (i) prior to a public disclosure . . . , has voluntarily disclosed to the Government the information on which allegations or transactions in a claim are based, or (2) who has

-12-

these provisions are not implicated in this case because the CID information was never publicly disclosed. Doc. 50 at p. 13. But even though the provisions themselves are not involved, Rural/Metro says that "public policy concerns" underling the provisions are somehow implicated by Relators' use of the CID information, which should lead the Court to strike allegations based on such information. Doc. 50 at p. 13. It is not entirely clear how Rural/Metro arrives at this end. Such a result would require, at least, a wholesale rewriting of both the False Claims Act's public disclosure defense, original source exception, and the provision allowing the Government to share CID information with Relators.

Unlike here, the two cases cited by Rural/Metro in this part of its motion actually did involve public disclosures, and the Relators were found not to be an "original source" of the public information.[19] But in analyzing the issue, both courts generally noted that the public disclosure/original source provisions are part of the False Claims Act to prevent "parasitic" lawsuits brought by Relators with no "independent" knowledge of the fraud.[20] This language is the apparent prompt for Rural/Metro. From these general statements of statutory policy, Rural/Metro suggests a new test: If Relators do not have "independent" knowledge of a fact in the Amended Complaint, it must be stricken. Rural/Metro provides no further detail on its definition of "independent." Rural/Metro cites no case that adopts or even addresses such a requested outcome. Rural/Metro's new test should be rejected.

There has been no public disclosure in this case. Relators did not file a "parasitic" lawsuit. In working with the Government during the under-seal investigation, Relators found further details that supported the claims that they already brought, and—with the Government's permission—Relators included those details in their Amended Complaint. This is an entirely commonplace procedure in False Claims Act litigation.

---

knowledge that is independent of and materially adds to the publicly disclosed allegations or transactions, and who has voluntarily provided the information to the Government before filing an action under this section." 31 U.S.C. § 3730(e)(4)(B).

[19] Doc. 50 at p. 14, *citing Seal 1 vs. Seal A*, 255 F.3d 1154 (9th Cir. 2001) and *U.S. ex rel. Biddle v. Bd. of Trustees of Leland Stranford, Jr., Univ.*, 161 F.3d 533 (9th Cir. 1998).

[20] *Seal 1 vs. Seal A*, 255 F.3d at 1158; *Biddle*, 161 F.3d at 537.

Ultimately, Rural/Metro's logic is inconsistent with the very provision on which it relies. The public disclosure provision is not implicated merely because a Relator's allegations involve information that may have been obtained from the Government.[21] In order for this provision to be implicated, the information in the Government's possession must become truly public. Rural/Metro concedes that the CID information was not "publicly" disclosed, which means the public disclosure provision itself could not bar Relators' use of the CID information.

Nothing in the text or policy underlying the False Claims Act precludes Relators' use of information gleaned from the Government's CID. Rural/Metro effectively concedes as much.

## IV. CONCLUSION

Wherefore, Relators respectfully urge the Court to deny Defendants' Motion to Strike.

SUBMITTED this May 12, 2017.

**RICHARD J. HARRIS LAW, P.C.**

By: /s/ Richard Harris
Richard J. Harris Attorney for Relators
Ralph Vassallo and Laura Spahn

CERTIFICATE OF SERVICE

I hereby certify that on May 12, 2017, I electronically transmitted the foregoing document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to all CM/ECF registrants listed for this matter.

s/ Richard Harris

---

[21] *See, e.g., U.S. ex rel. Meyer v. Horizon Health Corp.*, 565 F.3d 1195, 1200-01 (9th Cir. 2009); *U.S. ex rel. Rost v. Pfizer, Inc.*, 507 F.3d 720, 728-31 (1st Cir. 2007).