**NOT FOR PUBLICATION**

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Ralph Vassallo, et al., | No. CV-15-00119-PHX-SRB |
| Plaintiffs, | **ORDER** |
| v. | |
| Rural/Metro Corporation, et al., | |
| Defendants. | |

Relators Ralph Vassallo and Laura Spahn ("Relators") brought this *qui tam* matter on behalf of the United States of America ("Government") against Defendants Rural/Metro Corporation and Rural Metro Operating Company, LLC ("Defendants") for violations of the federal False Claims Act ("FCA"). Defendants now move to strike certain new factual allegations from Plaintiffs' Amended Complaint (Doc. 30). The Government has not intervened but seeks leave to file a statement of interest responding to Defendants' arguments. The Court accordingly considers Defendants' Motion to Strike Relators' Amended Complaint ("MTS") (Doc. 50)[1] and the Government's Motion for Leave to File Statement of Interest ("MFL") (Doc. 57).

**I.   BACKGROUND**

In January 2015, the U.S. Department of Justice ("DOJ") issued a Civil

---

[1] Defendants filed a Notice of Errata on July 15, 2017, correcting a misstatement in the original brief concerning the location of a meeting among Relators, Defendants, and the U.S. Department of Justice (Doc. 72). Aside from this minor error, Defendants' motion remains substantially the same. All references to Defendants' motion and citations to the same should therefore be understood to incorporate these corrections.

1  Investigative Demand ("CID") to Defendants requesting records and documents related
2  to an investigation into Defendants' billing practices. (MTS at 4; Doc. 66, Relators'
3  Mem. in Opp'n to Defs.' MTS ("MTS Opp'n") at 3.) Relators filed their original
4  complaint later that month. Defendants produced documents responsive to the CID on a
5  rolling basis during 2015. (MTS at 4; MTS Opp'n at 3.) They made supplemental
6  productions in 2016. (MTS at 3-4; MTS Opp'n at 3.) The Government shared copies of
7  Defendants' responsive documents with Relators. (MTS Opp'n at 3.) It appears that all
8  documents containing information that Defendants move to strike from the Amended
9  Complaint were responsive to the CID. (*See* MTS at 6-7; MTS Opp'n at 3-4.)

10  On July 21, 2016, counsel for all three parties participated in a meeting in
11  Phoenix, Arizona, to discuss possible resolution of the Government's investigation.
12  (MTS at 6; MTS Opp'n at 3.) Counsel for Defendants used PowerPoint slides to present
13  information during the meeting. (MTS at 6; MTS Opp'n at 3.) Defendants marked the
14  slides as confidential settlement communications under Rule 408 of the Federal Rules of
15  Evidence and did not provide copies of the slides to Relators. (MTS at 6.) The parties did
16  not reach a resolution.

17  On September 27, 2016, the Government gave notice of its intent not to intervene
18  in Relators' complaint. (MTS at 6.) The Court ordered the unsealing of Relators' FCA
19  claim on October 7, 2016. (MTS at 6.) On February 16, 2017, Relators filed an Amended
20  Complaint to include additional factual allegations. (MTS at 6; MTS Opp'n at 3.)
21  Defendants now move to strike those portions of the Amended Complaint, claiming that
22  Relators used confidential information shared during the July 21 meeting to bolster their
23  claims. (MTS at 6-7.) Relators deny using confidential communications to amend their
24  complaint. (MTS Opp'n at 3-4.) Rather, Relators argue that their amendments were based
25  on the documents Defendants produced in response to the CID, which the Government
26  properly shared with Relators. (MTS Opp'n at 3-4.)

27  The Government still declines to intervene but nevertheless seeks leave to file a
28  statement of interest. Citing what it characterizes as factual and legal inaccuracies in

Defendants' moving papers, the Government argues that Relators' use of CID-responsive documents to amend their complaint was permissible under the FCA. (MFL at 3.) The Government further contends that Defendants' arguments to the contrary threaten its enduring interests in the case and that its status as the real party in interest entitles the Government to file a statement of interest. (MFL at 3.) Defendants oppose the Government's request, describing it as a procedurally improper attempt to direct the course of litigation and to inject new factual material into the case. (*See* Doc. 63, Defs.' Mem. in Opp'n to MFL ("MFL Opp'n") at 2-6.)

## II.     LEGAL STANDARDS AND ANALYSIS

### A.     Motion for Leave to File Statement of Interest

The Government has a statutory right to "attend to the interests of the United States" in pending federal and state lawsuits. 28 U.S.C. § 517; *see also* § 518(b) ("When the Attorney General considers it in the interests of the United States, he may personally conduct and argue any case in a court of the United States in which the United States is interested. . . ."). "Pursuant to 28 U.S.C. § 517, the United States may submit a statement in a case expressing its views on relevant issues in which it has an interest." *Wortman v. All Nippon Airways*, 854 F.3d 606, 617 (9th Cir. 2017). The Government contends that its status as the real party in interest in *qui tam* matters adequately justifies its filing such a statement. (MFL at 2-3.) Defendants argue that the Government improperly seeks to use its Statement of Interest to introduce new facts, direct the course of litigation, and request specific relief. (MFL Opp. at 2.) Not so.

Even when the United States chooses not to intervene in a *qui tam* matter, it remains the real party in interest. *United States ex rel. Stoner v. Santa Clara Cty. Office of Educ.*, 502 F.3d 1116, 1126 (9th Cir. 2007) ("The United States is the real party in interest in any False Claims Act suit, even when it permits a *qui tam* relator to pursue the action on its behalf.") (quotations, citations, and modifications omitted). Courts regularly accept, and sometimes even solicit, statements of interest from the United States concerning dispositive motions in which national interests are at stake. *See, e.g.*,

*Wortman*, 854 F.3d at 617 (urging solicitation of agency views pursuant to Section 517 authority); *M.R. v. Dreyfus*, 697 F.3d 706, 735 (9th Cir. 2012) (noting "considerable respect" given to agency views raised in statement of interest filed under Section 517). *Qui tam* matters are no exception. *See, e.g.*, *United States ex rel. Mateski v. Raytheon Co.*, 816 F.3d 565, 568 n.5 (9th Cir. 2016) (noting government's filing of statement of interest in response to defendant's motion to dismiss *qui tam* matter); *United States ex rel. Calilung v. Ormat Industries, Ltd.*, No. 3:14-cv-00325-RCJ-VPC, 2015 WL 1321029, at *6 n.9 (D. Nev. Mar. 24, 2015) (calling Section 517 "sufficient authority" for government to file statement of interest in motion to dismiss, "particularly" in *qui tam* matters given possibility of intervention). The Court sees no reason to limit the Government's discretion to file a statement of interest here.[2]

Defendants' concerns about the scope of the Government's Statement of Interest are inapposite. Despite their assertion that Ninth Circuit law prohibits the Government from making factual claims and requests for relief, Defendants furnish no authority to that effect.[3] To the contrary, courts in the Ninth Circuit appear to construe rather broadly the types of matters in which the United States might have an interest. *See Wortman*, 854

---

[2] The Court acknowledges that a separate motion for leave to file a statement of interest under Section 517 may be a formality, as the Government's statutory authority entitles it to file such a statement "in any case in which it is interested." *See City of N.Y. v. Perm. Mission of Indian to the U.N.*, 446 F.3d 365, 377 n.17 (2d Cir. 2006) ("We note that the United States did not on its own initiative file a statement of interest, as it might have done, pursuant to 28 U.S.C. § 517."), *aff'd and remanded*, 551 U.S. 193 (2007); *see also United States ex rel. Budike v. PECO Energy*, 897 F. Supp. 2d 300, 313 (E.D. Pa. 2012) (noting submission of statement of interest pursuant to Section 517); *United States ex rel. Vainer v. DaVita*, No. 1:07-CV-2509-CAP, 2013 WL 1342431, at *9 n.4 (N.D. Ga. Feb. 13, 2013) (same).

[3] Defendants cite a 2003 decision out of the District of the District of Columbia. *See United States ex rel. McCready v. Columbia/HCA Healthcare Corp.*, 251 F. Supp. 2d 114 (D.D.C. 2003). Even if *McCready* were Ninth Circuit law, it would not prevent the Government from offering the context that it does here. The Government's discussion of the circumstances surrounding the July settlement discussion and what documents it did and did not share with Relators constitutes neither discussion of the Amended Complaint's merits nor involvement in the case's underlying facts. *See id.* at 120. The Government does state its opposition to striking the portions of the Amended Complaint that Defendants are targeting. But this hardly ventures beyond the Government's well-established right to preserve its continuing interest in those matters in which it declines to intervene. *See id.*

- 4 -

1  F.3d at 617 (urging solicitation of government's input on regulatory authority regarding fuel surcharge rates); *see also Dept. of Fair Emp. & Housing v. Law School Admission Council Inc.*, 896 F. Supp. 2d 849, 872-73 (N.D. Cal. 2012) (relying on government's statement of interest to refute defendant's misstatement of law).[4] Indeed, statements of interest may even go so far as to recommend a particular disposition for a pending motion. *See Republic of Austria v. Altmann*, 541 U.S. 677, 701 (2004) ("[N]othing in our holding prevents the State Department from filing statements of interest suggesting that courts decline to exercise jurisdiction in particular cases implicating foreign sovereign immunity."); *accord id.* at 714 ("[T]he United States may enter a statement of interest counseling dismissal. Such a statement may refer, not only to sovereign immunity, but also to other grounds for dismissal, such as the presence of superior alternative and exclusive remedies, or the nonjusticiable nature (for that or other reasons) of the matters at issue.") (Breyer, J., concurring) (citations omitted). The Court therefore grants the Government's motion to file its Statement of Interest and considers it in resolving Defendants' Motion to Strike.

### B.  Motion to Strike Amended Complaint

Rule 12(f) empowers courts to strike from a pleading any allegations that are "immaterial, impertinent or scandalous." Fed. R. Civ. P. 12(f). "Motions to strike are generally disfavored and rarely granted." *Lowe v. Maxwell & Morgan PC*, ___ F.R.D. ___, 2017 WL 4150441, at *2 (D. Ariz. Sept. 19, 2017). They will be denied unless it is clear that the allegations targeted by the movant "have no possible relation to the controversy, and may cause prejudice to one of the parties." *Travelers Casualty & Surety Co. of Am. v. Dunmore*, No. CIV S-07-2493 LKK/DAD, 2010 WL 5200940, at *3 (E.D.

---

[4] Courts in other circuits have adopted a similarly flexible view of what the government may include in a statement of interest, including factual statements. *See, e.g.*, *United States ex rel. Thomas v. Siemans AG*, 991 F. Supp. 2d 540, 550 (E.D. Pa. 2014) (relying on government's description of contracting process "both generally and specifically in this case"); *Budike*, 897 F. Supp. 2d at 313 n.14 (accepting government's attempt to "correct the record" regarding its discussions with relator's counsel); *Republic of Liberia v. Bickford*, 787 F. Supp. 397, 401 (S.D.N.Y. 1992) (relying on government's statement of interest concerning facts within its knowledge).

- 5 -

1 Cal. Dec. 15, 2010) (citing 5C Wright & Miller, Federal Practice & Procedure § 1380 (3d ed. 2004)). The movant retains the burden of persuading the court that the pleadings at issue should be stricken. *TriQuint Semiconductor, Inc. v. Avago Technologies, Ltd.*, No. CV-09-01531-PHX-JAT, 2010 WL 3034880, at *3 (D. Ariz. Aug. 3, 2010). All doubts are resolved in favor of denial. *Id.* Whether to grant such a motion is ultimately left to the district court's discretion. *Petrie v. Elec. Game Card, Inc.*, 761 F.3d 959, 966 (9th Cir. 2014).

Defendants' motion takes aim at portions of the Amended Complaint relating to ten patient exemplars. (*See* MTS at 3-4 ("Figure 1").) Defendants claim that these paragraphs of the complaint are based on information that Relators improperly gleaned from settlement negotiations and/or their document productions in response to the Government's CID, thus making them "immaterial" under Rule 12(f). Relators and the Government maintain that the addition of these exemplars was based on information properly shared with Relators by the Government and that such information's subsequent use in settlement negotiations does not bar its use in the Amended Complaint. The Court resolves each argument separately.

### 1. Federal Rule of Evidence 408

Defendants' first argument invokes the privileged status of settlement communications. They contend that because the ten patient exemplars discussed in the Amended Complaint were included in the PowerPoint presentation given at the July settlement meeting, Federal Rule of Evidence ("FRE") 408 bars their subsequent use to amend Relators' complaint. (MTS at 7.) Relators and the Government maintain that the information used to amend the complaint came from CID responses, not settlement talks. (MTS Opp'n at 7-9; SOI at 9-12.) The Court agrees.

FRE 408 prohibits the use of "conduct or a statement made during compromise negotiations about the claim" to prove or disprove a claim. Fed. R. Evid. 408(a)(2). Defendants do not indicate what relevant information shared during the PowerPoint presentation had not already been disclosed in response to the Government's CID. To the

contrary, Defendants acknowledge that information on each of the ten patient exemplars at issue had already been produced prior to the July meeting. (MTS at 7.) Defendants instead maintain that they "provided even more detailed information" regarding five of those exemplars during settlement negotiations. (MTS at 7.) They do not, however, distinguish between that information contained in the Amended Complaint which is based on this extra detail—purportedly reserved for settlement negotiations—and that which is based on the documents produced in response to the CID. Indeed, Defendants appear to conflate the two in their papers. (*See* MTS at 10.)

The Government offers some clarity. According to its Statement of Interest, the Government heeded Defendants' request not to share the PowerPoint slides with Relators, making their use to amend the complaint impossible. (SOI at 10.) Defendants offer no evidence to the contrary, relying instead on conclusory allegations that Relators "poached" this information. (MTS at 2.) But to strike a pleading based on a mere presumption of impropriety would itself be improper. In fact, it would transgress the very spirit of promoting candor and discouraging gamesmanship that Defendants invoke by raising FRE 408. (*See* MTS at 7-8.) As the Advisory Committee Notes to FRE 408 explain, "[E]vidence, such as documents, is not rendered inadmissible merely because it is presented in the course of compromise negotiations if the evidence is otherwise discoverable. A party should not be able to immunize from admissibility documents otherwise discoverable merely by offering them in a compromise negotiation." Fed. R. Evid. 408, advisory committee notes (S. Rep. No. 93-1277); *accord Phoenix Solutions, Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D. Cal. 2008). The Court declines to strike the targeted portions of the Amended Complaint on this basis.

### 2.     Sharing CID-Responsive Information with Relators

Defendants next argue that Relators are barred from using information learned through the Government's investigation to amend their complaint. (MTS at 11-15.) Relators and the Government respond that such information-sharing is specifically contemplated by the FCA, thereby approving its use to amend Relators complaint. (MTS

Opp'n at 7-9; SOI at 3-8.) The Court agrees.

The FCA is "the government's primary litigative tool for combatting fraud against the government." *United States ex rel. Kelly v. Boeing Co.*, 9 F.3d 743, 745 (9th Cir. 1993). Its investigative toolkit for *qui tam* matters includes the power to issue a CID to "any person" whom the government reasonably believes "may be in possession, custody, or control of any documentary material or information relevant to a false claims law investigation." 31 U.S.C. § 3733(a)(1). CID recipients must "make such material available for inspection or copying" or face legal action. §§ 3733(f)(2), (j). The FCA permits the "official use" of such materials by false claims investigators and other DOJ employees. §§ 3733(i)(2)(B), (i)(3). The statute defines "official use" to include "interviews of any qui tam relator" and "communications with . . . the counsel of other parties . . . concerning an investigation, case or proceeding." § 3733(l)(8). It also provides that "[a]ny information obtained by the Attorney General or a designee of the Attorney General under this section may be shared with any qui tam relator if the Attorney General or designee determine it is necessary as part of any false claims act investigation." § 3733(a)(1).

The clear language of the FCA notwithstanding, Defendants insist that Relators are not allowed to use the information shared by the Government to bolster their complaint. Defendants support this argument by analogy to Rule 9(b)'s heightened pleading standard for fraud. Namely, they argue that Relators "pirated" information from Defendants' CID responses to "circumvent" Rule 9(b), which generally disallows the use of discovery to supplement otherwise deficient pleadings. (MTS at 11.) Defendants' motion is not to dismiss for failure to satisfy Rule 9(b), but to strike portions of the Amended Complaint. Nor was the information used to amend Relators' complaint a product of discovery, which has yet to commence in this case.[5] *Cf. United States ex rel.*

---

[5] To the extent Rule 9(b) generally prohibits the use of discovery to satisfy its heightened pleading standard, the decisions cited by Defendants only reflect the federal judiciary's reluctance to relax Rule 9(b)'s pleading standards and proceed to formal discovery. *See, e.g.*, *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308-309 (5th Cir. 1999) (declining to create "judicial exception" to Rule 9(b)

- 8 -

*Joshi v. St. Luke's Hosp., Inc.*, 441 F.3d 552, 559 (8th Cir. 2006) (denying relator's request to permit discovery to satisfy Rule 9(b)). Defendants' reliance on Rule 9(b) is therefore of limited use here.

Conversely, courts that have addressed the present situation appear united in their allowance of amended complaints based on information gleaned from government investigations. *See, e.g.*, *United States ex rel. Underwood v. Genentech, Inc.*, 720 F. Supp. 2d 671, 680-81 (E.D. Pa. 2010) ("[I]f the DOJ believes a *qui tam* complaint warrants investigation, allowing the relator to use information the DOJ learns during that investigation is not likely to encourage "parasitic" litigation intended only to extort a settlement from the Defendant."); *United States ex rel. Banigan v. Organon USA Inc.*, No. 07-12153-RWZ, 2011 WL 794915, at *1 (D. Mass. Feb. 28, 2011) (noting presumption that "a relator may reinforce the complaint with information obtained from government documents").[6] The Court sees no reason to craft a new rule here.

The Court likewise finds Defendants' appeals to public policy unavailing. Defendants suggest that allowing Relators to amend their complaint with information beyond their own personal knowledge is improper. (MTS at 13-14.) No such rule exists for *qui tam* cases—and for good reason. A relator would have no need to amend a

---

for *qui tam* cases), *abrogated on other grounds by United States ex rel. Eisensten v. City of N.Y.*, 556 U.S. 928 (2009); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 231 (1st Cir. 2004) ("[A] qui tam relator may not present general allegations in lieu of the details of actual false claims in the hope that such details will emerge through subsequent discovery."); *but see United States ex rel. Doe v. Dow Chemical Co.*, 343 F.3d 325, 330 (5th Cir. 2003) (recognizing the possibility of relaxing Rule 9(b) in certain circumstances where a *qui tam* litigant shows that "the facts relating to the fraud are peculiarly within the perpetrator's knowledge") (quotations omitted). Notably, the court in *Karvelas* explained that this approach addresses the concern that post-discovery amendment of complaints would force the government to revisit its initial decision not to intervene. 360 F.3d at 231. Relators' Amended Complaint does not trigger that concern here. Relators' amendments are based on the same information that the Government had already considered before declining to intervene. Thus, there is no danger that the Government based its decision on incomplete information.

[6] *See also United States ex rel. Rafizadeh v. Continental Common, Inc.*, 553 F.3d 869, 873 n.6 (5th Cir. 2008) (refusing to relax Rule 9(b) for relator because government possessed pertinent documents); *United States ex rel. Clausen v. Laboratory Corp. of Am., Inc.*, 290 F.3d 1301, 1314 n.25 (11th Cir. 2002) (same); *United States ex rel. Russell v. Epic Healthcare Mgmt. Group*, 193 F.3d 304, 308 (5th Cir. 1999) (same).

1 complaint using documents from a government investigation if she already had personal
2 knowledge of that information. More importantly, courts' reliance on the government's
3 possession of additional information in declining to relax Rule 9(b) would be
4 meaningless if relators were not permitted to use it. Allowing Relators to amend their
5 complaint using Defendants' CID responses is a far cry from letting "those with no
6 independent knowledge of fraud use information already available to the government to
7 reap rewards for themselves without exposing any previously unknown fraud." *See Seal 1*
8 *v. Seal A*, 255 F3d 1154, 1158 (9th Cir. 2001). Nor is there any evidence suggesting that
9 Relators' entire *qui tam* action is "based upon" public disclosures. *See United States ex*
10 *rel. Biddle v. Bd. of Tr. of Leland Stanford, Jr. Univ.*, 161 F.3d 533, 537-38 (9th Cir.
11 1998). The FCA's public disclosure defense and original source exceptions are well-
12 established, to be sure. *See* 31 U.S.C. §§ 3730(e)(4)(A), (B). But the Court declines to
13 construe either as a mandate that every allegation in a *qui tam* complaint be based on the
14 relator's personal knowledge. Defendants' Motion is therefore denied.

15 **III.   CONCLUSION**

16   The Court concludes that the Government's Motion for Leave is to be granted and
17 Defendants' Motion to Strike denied. Defendants provide no legal basis to depart from
18 either the well-established practice of allowing the United States to attend to its enduring
19 interest in *qui tam* matters or the similarly common exercise of permitting relators to
20 amend their complaints using information gleaned from government investigations.

21   **IT IS ORDERED** granting the Government's Motion for Leave to File Statement
22 of Interest (Doc. 57).

23   **IT IS FURTHER ORDERED** denying Defendants' Motion to Strike Relators'
24 Amended Complaint (Doc. 50).

25       Dated this 5th day of October, 2017.

26
27
28

*[Signature]*
Susan R. Bolton
United States District Judge